IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ILLINOIS

_____

| | | |
|---|---|---|
| WANDA COMEIN, HENRIETTA L. TURNER, | * | |
| PAULA A.SMOTHERS, ALISON BROTHEN, | * | |
| MARGARET A. SELTZNER | | * |
| | | |
| Plaintiffs, | * | |
| | | |
| -vs- | * | Case No.  11 CV **5766** |
| | | |
| THE CITY OF COUNTRY CLUB HILLS | * | |
| , and | | |
| ALDERMAN VINCENT V. LOCKETT, individually | | * |
| and in his official capacity as an Alderman for | | |
| The City of Country Club Hills and | | |
| ALDERMAN STEVEN BURRIS, individually | * | |
| and in his official capacity as an Alderman for | | |
| The City of Country Club Hills | | |
| , | | |
| | | |
| Defendants. | * | |

_____

COMPLAINT
_____

NOW COMES Plaintiffs Wanda Comein, Margaret A. Seltzner, Alison Brothen, Paula A.

Smothers and Henrietta L. Turner, by their attorneys, John C. Ireland of the Law Office of John C.

Ireland and Howard LeVine of the LeVine, Wittenberg, Shugan & Schatz, Ltd., for and as their

Complaint against the above-named defendants,  alleges, states, avers and shows the Court as

follows:

## JURISDICTION AND VENUE

1.      This is an action pursuant to 42 U.S.C. Section 1983 and 28 U.S.C. §§ 2201 and

2202,  for legal, equitable and declaratory relief and to secure protection and redress deprivation of

rights secured by the First and Fourteenth Amendments to the Constitution of the United States.

This Court is vested with jurisdiction over plaintiff's claims under 42 U.S.C. § 1983 pursuant to 28

U.S.C. §§ 1331 and 1343(a)(3) and (4).  Plaintiffs also bring claims under Title VII.

2.      The Court is vested with venue over plaintiff's claims pursuant to 28 U.S.C. §

1391(b).

3.      Plaintiffs and all defendants reside or maintain their principal place of business in

the Eastern District of Illinois.

## PARTIES

4.      Plaintiffs Wanda Comein, Margaret Seltzner, Alison Brothen, Paula Smothers and

Henrietta Turner are individuals who reside in this District.

5.      Defendant City of Country Club Hills (Hereinafter referred to as "CCCH" andor

"City") is a municipal corporation and political subdivision of the State of Illinois with principal

offices located at 4200 W. Main St. Country Club Hills Illinois 60478.

6.      Defendant Alderman Vincent Lockett is an adult individual who, on information and

belief, resides in the Eastern District of Illinois and the City of Country Club Hills Illinois.  At all

times pertinent and material to this Complaint, defendant Lockett was employed by the City of

Country Club Hills as an Alderman.  Defendant Lockett is named in this Complaint in his

individual and official capacities.

7.      At all times pertinent and material to this Complaint, Defendant Lockett acted within the scope of his office and employment and under color of the statutes, ordinances, customs, policies and usages of the City of Country Club Hills.

8.      Defendant Alderman Steven Burris is an adult individual who, on information and belief, resides in the Eastern District of Illinois andor in the City of Country Club Hills Illinois.  At all times pertinent and material to this Complaint, defendant Burris was employed by the City of Country Club Hills as an Alderman.  Defendant Burris is named in this Complaint in his individual and official capacities.

9.      At all times pertinent and material to this Complaint, Defendant Burris acted within the scope of his office and employment and under color of the statutes, ordinances, customs, policies and usages of the City of Country Club Hills.

10.     Defendants Burris and Lockett personal conduct caused the deprivation of a federal right thus they are liable under § 1983.

11.     Defendants Burris and Lockett personal conduct caused the deprivation of a federal right thus they are liable under § 1983 via violations of a constitutional rights and such right was clearly established so that a reasonable Councilperson would have known their actions were unlawful.

12.     It is clearly established constitutional right to partake in free speech including elections of the Mayor.

13.     Further it is clear that Defendants Lockett and Burris understood that what they were doing violates those rights.

**ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTIONS**

14.     Plaintiffs were employed as employees of CCCH in the following positions:

a.  Wanda Comein was employed as Boards and Commissions Director and was a loyal and dedicated employee of City for 14 years.

b.  Margaret Seltzer was employed as Director of Communications and was an loyal and dedicated employee of City for two years.

c.  Alison Brothen was employed as Finance Director and was a loyal and dedicated employee of City for 15 years.

d.  Paula Smothers was employed as Director of Public Works AND Director of Community Development and was a loyal and dedicated employee of City for 15 years.

e.  Henrietta Turner was employed as City Manager and was a loyal and dedicated employee of City for 16 years.

.

15.    Most of the Plaintiffs were long term employees some working in these positions for over 10 years.

16.    Plaintiffs, each and all, were very involved in local politics.

17.    Plaintiffs, each and all, supported and worked on the election and reelection campaigns for the Mayor of CCCH. Plaintiffs were members or managers of the Mayor's election campaign and/or known to be supporters of the Mayor and his election campaigns.

18.    At the time of the filing of this Complaint the mayor of the City of Country Club Hills is Dwight Welch. (Hereinafter "Mayor" or "Welch")

19.    Mayor Welch has been elected Mayor of City of Country Club Hills for seven (7) terms.

20.    Welch was first elected Mayor of CCCH in 1987, thus Welch has been Mayor of CCCH for over twenty years.

21.    In the last few years and in the last two elections, the political rivals of Welch have struggled and fought to unseat Welch from his elected office.

22.    These rivals include and are principally lead by Defendants Burris and Lockett.

23.    Defendants Burris and Lockett have argued that it was improper to have a white (Caucasian) person be the mayor of a city whose population is predominately African-American (such as is the case in CCCH).

24.    In fact Defendants Burris and Lockett have both made racially charged arguments such as described above the centerpiece of their attempts to unseat Mayor Welch.

25.    In 2007 Burris was quoted in local media as saying:

   a.    "Why do we need a white mayor, a white city clerk, a white treasurer, and a white finance director controlling African American money".

26.    Despite this racially charged rhetoric Mayor Welch defeated Mr. Burris in the Mayoral election in 2007.

27.    On April 5, 2011 Mayor Welch defeated Alderman Lockett in a hotly contested election for Mayor.

28.    After being defeated Lockett began to recruit and conjugal other Alderpersons to effectively unseat the Mayor, not through electoral politics but by improper use of the budget of CCCH as a political tool and a tool to wield political retribution in violation of the First Amendment.

29.     Defendant s attempted to create a false emergency, claiming that the budget was unbalanced and the city was running a budget deficit or would if drastic budget cuts were not made immediately.

30.     The Defendants demanded that a reduced budget be proposed.

31.     Plaintiffs, being good employees and attempting to follow orders of the Defendants, drafted a reduced budget which reduced the total budget by approximately seven percent (7%).

32.     This budget was rejected, because it did not contain retaliatory terminations of the Plaintiffs.

33.     Accordingly the Defendants drafted a different proposed budget.

34.     The Defendants budget included drastic cuts to some areas: the budget included cutting the positions of a substantial number of supporters of the Mayor in the local government.

35.     The cuts also eliminated the positions of the Plaintiffs in retaliation for Plaintiffs' political support for the Mayor, which is a protected constitutional right.

36.     While Defendants claimed a "budget crisis" as the reason for the terminations, this "budget crisis" is shown to be false as the second budget actually increased city spending by 7%.

37.     Defendants further added into the budget many additional items costing thousands of dollars.

   a.   For example, amid the false claims of "budget crisis", the salary of the police chief was increased by $10,000.00. (The police chief was also a political ally  (at that time) of Defendants Burris and Lockett).

   b.   Also the only remaining Police Commander, (husband of the police chief and political supporter (at that time) of Defendants Burris and Lockett) also had his salary increased.

6

    c.   The Lockett/Burris approved budget created of a summer camp in which children and friends of several aldermen were paid $1,000 to attend. After a council meeting, Ald. Comein asked Burris how he would pay for the summer camp, and Burris responded: "With your wife's salary.

38.    Defendant Burris claimed that the terminations would save the city $2,000,000.00 per year, but in the end the budget was larger after the cuts than before the cuts.

39.    Further evidence of pretext in the reasons for political terminations shown by the false statements by Lockett and others about the Plaintiffs job performance

    a.   Generally Lockett and others claimed the Plaintiff employees were not doing their jobs, or not doing them properly.

    b.   For example On April 14, 2011 Lockett in a council meeting claimed that Plaintiff Seltzner was not performing her job. Plaintiff denies this false claim and was told by her supervisor that Plaintiff Seltzer was doing her job very well.

    c.   On April 27, 2011 in another council meeting, Lockett claimed Plaintiff Seltzner was not working full time hours, but was paid full time wages; this was also false as Plaintiff worked full time.

    d.   April 14, 2011 Lockett claimed falsely that Seltzner and several other Plaintiffs "sit around and do nothing".

       i.   During this week Plaintiff Seltzner was working on three different projects and was working beyond her normal 40 hour work week.

40.    Further indication of pretext is that Defendants allowed 13 employees to continue working but not the Plaintiffs.

41.     Defendants, desiring to retaliate for the Plaintiffs' having supported the Mayor, created a budget which terminated the Plaintiffs employment with the express intent of retaliation for the Plaintiffs' political activities.

42.     Lockett and Burris were aware of the support as shown by:

    a.  On March 18, 2011 Plaintiff Smothers a political sign was on a house rented by Lockett as a campaign headquarters. Plaintiff Smothers was enforcing the city ordinance in her role as public works director and ordered the removal of the sign Lockett personally came to the property with a video camera. Lockett repeatedly asked Smothers questions while the sign was being removed, such as "did the mayor send you".

    b.  The sign was removed by George Arnold and Ron Evans.

43.     Further the retaliation of the Defendants is also shown by the veto of the budget by the Mayor, and the subsequent overcoming of that veto by council vote.

44.     Mayor Welch was so convinced of the political retaliation  that he refused to attend several city council meetings. Mayor Welch was quoted as saying:

    a.   "It's obvious that some in city council are more interested in political vindictiveness than steering the city"

    b.  And that the council's attempt to cut jobs are being produced with no evidence that the layoffs are needed.

45.     Mayor Welch specifically stated that the terminations were illegal political retaliation, and actually placed this stated belief in a correspondence to each of the Plaintiffs and to all city officials including Defendants Lockett and Burris.

46. Plaintiffs herein incorporates this correspondence as part of this Complaint and attaches that correspondence as Exhibit One. (See Correspondence dated April 29, 2010 attached as Exhibit One)

    a. In the correspondence (Ex. One) Mayor Welch wrote, "I have been informed that some members of the City Council are considering the elimination of many important positions by way of budget cuts. It appears these proposed cuts are not based on any reason other than pure political retribution". (See Ex. One)

    b. "For my part, I will do everything in my power as Mayor to prevent that from happening and to protect your jobs from political retaliation".

    c. "I will veto any ordinance or financial action which appears retaliatory"(Id).

47. Defendants votes to terminate plaintiff's employment were motivated by an illegitimate intent to punish plaintiffs and retaliate against plaintiffs for their political activism.

48. Defendants hostility to the Plaintiffs due to their first amendment speech is also shown by the failure to follow policy and procedure of CCCH to not refer to a city employee by name, in discussions, rather by citing that person's job title.

    a. For example Defendant Lockett repeatedly described the termination of Plaintiff Wanda Comein by discussing "Wanda's job", rather than referring to her job title. Thus Lockett showed his interest was not in the job elimination, rather the elimination of "Wanda" from the City payroll for political reasons.

49. Of the thirteen persons terminated, all were allies of the mayor, and all Plaintiffs in this action were allies of the mayor.

50. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

51.     Plaintiff hereby states that this complaint is drafted in accordance with the provisions of Federal Rules of Civil Procedure for "Notice Pleading" and not "Fact Pleading" in fulfillment of Rule 8(a), which requires that a claim for relief need contain, in addition to a statement concerning jurisdiction and a demand for judgment, that Plaintiff is entitled to relief

COUNT I

**PLAINTIFF'S FIRST CAUSE OF ACTION AGAINST**

**DEFENDANTS PURSUANT TO 42 U.S.C. § 1983 FOR**

**VIOLATING PLAINTIFFS' FIRST AMENDMENT RIGHTS**

52.     Plaintiff realleges and incorporates as if fully set forth herein the allegations contained in all paragraphs in this complaint.

53.     Plaintiffs' each and all made statements, took actions and held beliefs in support of the Mayor of the City of Country Club Hills.

54.     The Plaintiffs were employees of the City of Country Club Hills.

55.     The protected political speech was made outside of their capacity as employees as the Plaintiffs political speech was not part of their official duties or jobs.

56.     The Plaintiffs' made protected political speech via Plaintiffs' public support of the Mayor's candidacy running for elective office.

57.     Public employees (including the Plaintiffs) retain their constitutional protections for their participation in the public discourse.

58.     A government employee may not be discharged or retaliated against for engaging in activity protected by the First Amendment, regardless of whether the employment is at-will or contractual, part-time or full-time, or probationary or permanent,

59.     The Free Speech Clause of the First Amendment prohibits the government from "abridging the freedom of speech."

60.     The employees (Plaintiffs) were speaking as a citizen on a matter of public concern; the electoral process.

61.     Plaintiffs show evidence of a causal link between Plaintiffs' protected speech and their subsequent terminations via evidence which includes but is not limited to the following:

   a.   The attached correspondence of the Mayor (Ex one) wherein he expressed a belief that the terminations were politically motivated,

   b.   The pretext of the budget "crisis"( that the final budget was larger than the Plaintiff proposed budget and the additional spending added to the budget).

   c.   and timing of terminations being made as soon possible after the election.

62.     Defendants actions in causing the termination of plaintiffs' employment were taken in retaliation for plaintiffs' exercise of their rights to freedom of speech and to petition the government for redress of grievances, and, as such, constitute a deprivation without due process of law of plaintiff's fundamental, substantive rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution, and, thus, defendant is liable to plaintiff under 42 U.S.C. § 1983.

63.     As a direct, foreseeable and proximate result of defendant's actions which deprived plaintiffs of their rights as complained of in this Complaint, plaintiffs suffered injury and damages in the form of loss of employment, loss of pay, loss of employment benefits, loss of seniority, mental and emotional distress, future vocational loss, humiliation before coworkers and damage to their reputation. These damages and injuries continue into the present and will continue into the foreseeable future.

64.     Defendant's unlawful actions as alleged in this Complaint were taken in willful, wanton, reckless and malicious disregard of plaintiff's Constitutional rights.

<u>COUNT II</u>

**PLAINTIFF'S SECOND CAUSE OF ACTION AGAINST**

**DEFENDANTS PURSUANT TO 42 U.S.C. § 1983 FOR**

**VIOLATING PLAINTIFF'S RIGHT TO EQUAL PROTECTION OF LAWS**

65.     Plaintiff realleges and incorporates as if fully set herein.

66.     Qualified immunity protects public officials from civil liability for their actions which "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known"

67.     Clearly, a reasonable official in Defendant Burris and Lockett's position would understand that terminating employees for participating in political speech activities is a violation of the employees' right to free speech.

68.     Defendants Burris and Lockett's actions in singling plaintiffs out for harassment and causing the termination of plaintiff's employment were taken with a totally illegitimate animus in retaliation for plaintiff's exercise of her right to freedom of speech is without any rational basis or legitimate governmental purpose, and, therefore, constitute a deprivation of plaintiff's rights to equal protection of law as guaranteed by the Fourteenth Amendment to the United States Constitution, and, thus, defendant is liable to plaintiff under 42 U.S.C. § 1983.

69.     As a direct, foreseeable and proximate result of defendant's actions which deprived plaintiffs of their rights as complained of in this Complaint, plaintiffs' suffered injury and damages in the form of loss of employment, loss of pay, loss of employment benefits, loss of seniority, mental and emotional distress, future vocational loss, humiliation before their coworkers and

damage to their reputation. These damages and injuries continue into the present and will continue into the foreseeable future.

70. Defendant's unlawful actions as alleged in this Complaint were taken in willful, wanton, reckless and malicious disregard of plaintiff's Constitutional rights.

**PRAYER FOR RELIEF**

**WHEREFORE** plaintiffs respectfully prays this Court enter Judgement against defendants on each of plaintiff's causes of action and award plaintiff the following relief:

A. Declare and adjudge pursuant to 28 U.S.C. § 2201, that by way of the adverse employment actions complained of herein, defendant deprived plaintiff of his rights to free speech and to petition the government for redress of grievances under the First and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

B. Order defendants to pay to plaintiff her lost back pay, future pay and other lost earnings plus interest, and to compensate her for her lost employment benefits proximately caused by defendants' violation of plaintiff's rights guaranteed to her by the First Amendment to the United States Constitution.

C. Order defendants to pay to plaintiffs an amount sufficient to compensate her for their lost future earning capacity.

D. Order defendants to pay to plaintiffs an amount sufficient to compensate their for their past and future emotional distress and loss of personal and professional reputation.

E. Order defendants to reinstate plaintiffs to their original positions with full responsibilities, seniority, benefits, and pay restored, and to purge all files and records within the possession or control of defendant of documents containing adverse information resulting from defendants' unlawful actions.

F.      Order defendant Burris and Lockett to pay to plaintiff an amount sufficient to punish Defendants and to deter Defendants and others from the willful, wanton, reckless and malicious disregard of the rights of plaintiffs and others.

G.      Order defendants to pay plaintiff's costs, disbursements and attorney's fees reasonably incurred in this action.

H.      Order such other and further relief as the Court deems just and reasonable under the circumstances.

COUNT III

**PLAINTIFFS TITLE VII CLAIMS**

**CLAIMS AGAINST CITY OF COUNTRY CLUB HILLS FOR VIOLATIONS OF**

**TITLE VII**

**By Wanda Comein,** Margaret A. Seltzner, Alison Brothen

71.      Plaintiff realleges and incorporates as if fully set forth herein the allegations contained in this complaint.

72.      Plaintiff seeks redress for Defendant's creation and perpetuation race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII").

73.      Plaintiff fulfilled all conditions precedent to the institution of this action under Title VII, as amended by the Civil Rights Act of 1991.

*74.*      Plaintiff filed a "Charge of Discrimination" with the Illinois Department of Human Rights (IDHR) and Equal Employment Opportunity Commission.

*75.*      The agencies (IDHR and EEOC) have since issued a "Notice of Right to Sue (Issued on Request)".

76.     Plaintiff has timely filed this lawsuit within ninety (90) days from the date of the issuance of the *Notices of Right to Sue*

77.     This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, as amended, and 28 U.S.C. §1331 and §1343.

78.     Plaintiffs were employees of Defendant pursuant to Title VII.

79.     At all relevant times, Plaintiffs performed their job responsibilities in a manner that met and or exceeded Defendant's legitimate expectations.

80.     On a continuing, ongoing and escalating basis the Plaintiffs discriminated against the Plaintiff based on her race.

81.     The discrimination has caused the Plaintiffs a loss of income, benefits and other harms.

82.     Plaintiff reported/complained about the discrimination to Defendant's supervisory personnel.

83.     After Plaintiff reported the discrimination, Defendant took no action to investigate, remedy, stop, alleviate, or otherwise address the discrimination.

84.     The actions of Defendant in intentionally engaging in and condoning discrimination against Plaintiff has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

85.     The actions of Defendant as perpetrated by its agents are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to

deprive equal employment to, and otherwise adversely affecting Plaintiffs because of their race, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), et seq.

86.     At all times relevant to this cause of action, Defendant had a duty under Title VII to refrain from discriminating against Plaintiff based on their race. Defendant had a duty under Title VII to prevent the ongoing race discrimination.

87.     Plaintiff has a federally protected right to work in a workplace that is free from race discrimination.

88.     Racial comments included:

a.  On a number of occasions Defendant Lockett ordered Margret Setlzner to not use "the mayor's ugly white fact on city materials she prepared as part of her work duties as City Spokesperson.

b.  Plaintiff Seltzner complained about the use of racial terms the next day. (Plaintiff's Complaint dated 4/15/2011 attached as Exhibit Two)

c.  Shortly thereafter Defendant Lockett shouted from across a parking lot, that black women and white women are treated differently, implying that whites received better treatment.

d.  Plaintiff Seltzer again protested the racial comments, in a memo dated 5/27/2011

e.  Plaintiff Comein also noted this racial comment to Plaintiff Seltzer and quoted Lockett as saying "They wouldn't put a white woman in the basement".

f.  On several different occasions, Lockett was known to say he "would remove all the white faces from City Hall"

g.  Plaintiff Comein likewise was subject to discrimination, on April 14, 2011 Lockett made disparaging comments about whites during a council meeting.

h.  On April 15, 2011 Plaintiff Comein protested the comments in a correspondence dated April 15, 2011. (correspondence dated April 15, 2011 attached as Exhibit Three).

89.  Burris's racial animosity has been long standing, in 2007 he was quoted as saying "Why do we need a white mayor, a white city clerk, a white treasurer, and a white finance director controlling African American money".

90.  The discriminatory actions by Defendant, through their management agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff.

91.  Defendant, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

92.  Defendant maintains a work environment that discriminates against White employees.

93.  The actions of Defendant in intentionally engaging in and condoning discrimination against Plaintiff has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

a.  All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

b.  Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the depression, humiliation, anguish, and emotional distress, caused by Defendant's conduct;

c.   Defendant be required to pay prejudgment interest to Plaintiff on these damages;

d.   A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

e.   A permanent injunction requiring Defendant adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

f.   The Court retain jurisdiction of this case until such time as it is assured that Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g.   An injunctive order requiring the Defendants to offer the Plaintiff one or more of the positions to which the Plaintiff was denied and/or not promoted to.

h.   An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.   Such other relief as the Court may deem just or equitable.

## COUNT IV

## VIOLATIONS OF TITLE VII
## DISCRIMINATION BASED UPON SEX

By ALL Plaintiffs

94.   Plaintiff incorporates and realleges all paragraphs contained in this complaint as if fully set forth herein

95.   At all times relevant to this cause of action, Plaintiff was a "person" and "employee" of Defendants, and Defendants were her "employer" covered by and within the meaning of Title VII.

96.   The actions of Defendants as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of

discriminating against, depriving and tending to deprive equal employment to, and otherwise

adversely affecting Plaintiff because of her sex, in violation of Title VII of the Civil Rights Act of

1964 as amended, 42 U.S.C. § 2000(e), et se,  reckless and malicious disregard of plaintiff's

Constitutional rights.

97.     At all times relevant to this cause of action, Defendant had a duty under Title VII to

refrain from discriminating against Plaintiffs based on their gender.

98.     Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment.

99.     The discriminatory actions by Defendants, through their management agents and

employees, were intentional and willful, and in deliberate disregard of and with reckless

indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff.

100.    Defendants, by and through their agents and employees, engaged in the foregoing

acts and conduct when they knew or should have known that the same were in violation of Title VII

and any alleged reasons to the contrary are pretextual.

101.    The actions of Defendants in intentionally engaging in and condoning sexual

discrimination against Plaintiff has caused Plaintiff great mental anguish, humiliation, degradation,

physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary

losses, and other consequential damages.

102.    Plaintiffs' claims are supported and demonstrated by the testimony/pleadings of

Chanay Mackey who has plead:

      a.    Both before and after this election, these aldermen began voicing complaints to the

          effect that, "These women [i.e. the women employees of Country Club Hills] make too

          much money," and "What skills do these people [i.e. the women employees of Country

          Club Hills] have to do the jobs that they have?"

b. Ten aldermen make up the City Council of Country Club Hills. Seven of these aldermen voted on or about July 11, 2011 to eliminate certain City positions. Overwhelmingly, the positions eliminated were held by women. The female employees and positions eliminated effective July 11, 2011 were: (1) Henrietta Turner, City Manager; (2) Paula Smothers, Director of Public Works; (3) Marge Seltzer, Director of Public Relations; (4) Wanda Comein, Director of Boards and Commissions; (5) Allison Brothen, Finance Director; (6) Syreeta Slappey, Administrative Assistant; (7) Madelyn Holland, Administrative Assistant; (8) Michelle Garner, Administrative Assistant; (9) Shelia Watson, Administrative Assistant; and (10) Teri O'Donnell, police commander. Only three men's positions were eliminated as a result of this vote, and all three men were police commanders.

c. On the same date, Mackey's salary was reduced by by the same seven aldermen from approximately $88,028.00 a year to approximately $44,014.00 a year. Initially, Mackey had been.told that her positions had been targeted for elimination also, but she ultimately was retained by the City with reduced pay.

d. These votes to eliminate positions and reduce Mackey's salary were ostensibly taken "to trim the fat" in the City's budget, though the City's then current budget already had been balanced before any of those cuts were implemented.

e. Though Mackey is the head of the City's Human Resources department, she has not been included in any of these staffing decisions made by the City Council.

f. Since the vote, Mackey has been told by the seven aldermen that she "need[s] to prove herself to show that she should retain her job. The only other person who has been told by these aldermen that she must "prove herself was another woman: Valerie

Lewis, a vice-president of the Owens Group, the City's insurance broker. As a result of these actions by the City Council, all the remaining department heads for Country Club Hills, except for one, are men. The male department heads have not been asked to "prove themselves," asked to demonstrate that their credentials are appropriate for the positions that they hold, or had their positions cut to part-time

103.    Plaintiffs sex discrimination claims are demonstrated by this evidence.

## PRAYERS FOR RELIEF FOR THE FIRST SEX DISCRIMINATION CLAIMS OF RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

j.      All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

k.      Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the depression, humiliation, anguish, and emotional distress, caused by Defendant's conduct;

l.      Defendants be required to pay prejudgment interest to Plaintiff on these damages;

m.      A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

n.      A permanent injunction requiring Defendants to adopt employment practices

and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

o.     The Court to retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

p.     Punitive damages as a result of Defendant's deliberate, intentional, willful, wanton and malicious conduct;

q.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

r.     Such other relief as the Court may deem just or equitable.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF SIX QUALIFIED PERSONS.**

Dated August 23, 2011.

_____/s/ John C. Ireland_____

John C. Ireland
The Law Office of John C. Ireland
1921 Charles Lane
Aurora IL
60505
630-464-9675
Fax 630-206-0889